## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **TERESA D. THOMPSON,** | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| **vs.** | ) | CASE NO. 11-CV-730-FHM |
| | ) | |
| **CAROLYN W. COLVIN, Acting** | ) | |
| **Commissioner of the Social Security** | ) | |
| **Administration,**[1] | ) | |
| | ) | |
| DEFENDANT. | ) | |

### OPINION AND ORDER

Plaintiff, Teresa D. Thompson, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[2] In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.

### Standard of Review

The role of the court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination of whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the

---

[1] Effective February 14, 2013, pursuant to Fed. R. Civ. P. 25(d)(1), Carolyn W. Colvin, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Plaintiff, Teresa D. Thompson's applications for Disability Insurance and Supplemental Security Income benefits were denied initially and upon reconsideration. A hearing before an Administrative Law Judge (ALJ) Gene M. Kelly, was held February 9, 2010. By decision dated June 21, 2010, the ALJ entered the findings which are the subject of this appeal. The Appeals Council denied Plaintiff's request for review on September 20, 2011. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

Commissioner has applied the correct legal standards. *See Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1237 (10th Cir. 2001); *Winfrey v. Chater,* 92 F.3d 1017 (10th Cir. 1996); *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Secretary of Health & Human Servs.,* 993 F.2d 799, 800 (10th Cir. 1991). Even if the court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495 (10th Cir. 1992).

For the reasons discussed below, the Court affirms the decision of the Commissioner.

## Background

Plaintiff was 51 years old on the alleged date of onset of disability and 53 years old on the date of the denial decision. She has a high school education and formerly worked as a medical transcriptionist, as well as a dog breeder/kennel operator. Plaintiff claims to have been unable to work since June 26, 2008, as a result of fibromyalgia, allergies, depression, and anxiety [R. 132].

Plaintiff testified that her impairments are related to her back, shoulder, neck, hips, thighs, headaches, fibromyalgia, allergies and concentration. She suffers allergic reactions

2

to perfumes, colognes, fabric softeners, air fresheners, and other scents, which have caused anaphylaxis – her throat swells. [R. 37-38].  Plaintiff has never been hospitalized because of the anaphylaxis reactions. [R. 38].  Plaintiff treats the anaphylaxis by use of an inhaler and big doses of Benadryl. [R. 39].

Plaintiff further testified that the pain from the fibromyalgia limits how far she can walk, how long she can sit, and that it effects her whole body.  Plaintiff testified that she has difficulty getting to sleep and staying asleep due to pain, [R. 49], though she is prescribed pain relievers and muscle relaxers [R. 46].   She suffers from constant headaches which, at times, inhibit her concentration. [R. 38-41].  Plaintiff also claims to suffer from depression and anxiety and has bouts of crying spells sometimes daily which last 20 to 30 minutes. [R. 51].  She is unable to make decisions, concentrate or stick to a schedule. [R. 46].  She has not received any counseling for her depression and anxiety due to lack of finances, though she is on medication which helps. [R. 45].

Plaintiff claims she is able to bend to touch her knees, but cannot squat and get back up.  She can occasionally go up and down a flight of stairs.  She has problems with her hands and fingers and on certain days cannot manage a keyboard.  [R. 43].  She is able to drive and does not have problems operating the foot pedals. [R. 44].  Plaintiff testified that she is able to make her bed, do laundry, use the microwave and dust, but she is unable to do dishes, sweep, mop, or vacuum. [R.47].

### The ALJ's Decision

The ALJ determined that the Plaintiff's severe impairments include problems with shortness of breath due to allergies, knees, back, shoulder, neck, headaches, hips, thighs, depression, and anxiety.  The ALJ further determined that Plaintiff has the residual

3

functional capacity to perform less than the full range of light exertional work, is able to lift and/or carry 20 pounds, stand and/or walk 6 hours in an 8 hour workday at 30 minute intervals, and sit 6 hours in an 8 hour workday at 1 hour intervals.  Plaintiff is limited in her ability to climb, is able to occasionally stoop, crouch, crawl, kneel, push and/or pull, reach overhead, twist her torso, nod her head, is slightly limited in her ability to finger, feel, and grip.  Plaintiff should avoid cold and damp environments, dust, fumes,  gases, and requires low light/low noise environments, she is able to perform simple, repetitive, and routine tasks and is slightly limited in reference to contact with the general public, co-workers, and supervisors.

Although Plaintiff was unable to perform her past relevant work and her ability to perform work at all exertional levels is limited, based on the testimony of the vocational expert, the ALJ found that there are a significant number of jobs in the national economy that Plaintiff could perform with these limitations. [R. 23]. Therefore, the ALJ found that the Plaintiff was not disabled since July 25, 2008.  The case was thus decided at step five of the five-step evaluative sequence for determining a claimant is disabled.  *See Williams v. Bowen,* 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

### Plaintiff's Allegations

Plaintiff asserts that the ALJ: 1) failed to properly consider the evidence at step 3 of the sequential evaluation process; 2) failed to properly consider the medical source information; 3) failed to perform a proper step 5 determination; and 4) failed to perform a proper credibility determination.

4

## Analysis

### Consideration of Evidence at Step Three

At step three of the evaluative sequence, the ALJ is required to compare the medical evidence to the Listings of Impairments (listings) contained in the regulations and to discuss the evidence and the reasons for determining that Plaintiff is not disabled at step three. *Clifton v. Chater,* 79 F.3d 1007, 1009 (10th Cir. 1996). When there is evidence of a mental impairment that allegedly prevents a claimant from working, at step three the ALJ must follow the procedure for evaluating mental impairments set forth in the regulations and is required to document the application of the procedure, known as the psychiatric review technique (PRT), in the decision. 20 C.F.R. §§ 404.1520a(e), 416.920a(e), *Carpenter v. Astrue,* 537 F.3d 1264, 1268 (10th Cir. 2008)(discussing application of the psychiatric review technique by the ALJ), *Cruse v. United States Dep't of Health & Human Servs.,* 49 F.3d 614, 617 (10th Cir. 1995)(same). Plaintiff argues the case should be remanded because the ALJ failed to perform the required PRT analysis after finding Plaintiff's mental impairments were severe.

The Commissioner acknowledges that the ALJ failed to perform the PRT analysis but argues that in light of the ALJ's findings regarding Plaintiff's mental RFC, the error is harmless. Plaintiff contends that the error is not harmless. According to Plaintiff, since the ALJ did not perform the proper evaluation, there is no evidence to support the conclusion that Plaintiff's activities of daily living are not extremely limited and thereby meet or equal the Listing level of severity for a finding of disability. In *Fischer-Ross v. Barnhart,* 431 F.3d 729, 733 (10th Cir. 2005), the Court held that an ALJ's findings at subsequent steps in the

sequential evaluation may provide a proper basis for upholding a conclusion that a claimant does not meet or equal a listing.  Such a situation exists in this case.

In this case, the ALJ ordered a consultative mental evaluation which was performed by Dr. Minor Gordon, Ph.D.  The consultative mental evaluation was thoroughly discussed in the ALJ's decision. [R. 20].  The ALJ included the mental limitations supported by the evidence in his RFC and concluded at step five that Plaintiff was not disabled. [R. 16, 23]. The ALJ specifically addressed the Plaintiff's activities of daily living and found that they were not strong evidence in favor of finding Plaintiff disabled.  [R. 21]. The point of requiring the performance of the PRT analysis is to assess the severity of alleged mental impairments.  Although the ALJ did not perform the PRT, he specifically considered Plaintiff's mental impairments and assessed their severity.  Further, the mental limitations that were supported by the record were included in the RFC finding.   The court finds that the failure to perform the PRT is harmless.  No reasonable administrative factfinder, following the correct analysis, could have resolved the question of the severity of Plaintiff's mental impairments in any other way.  *See Fischer-Ross,* 431 F.3d at 735 (discussing harmless error analysis at step 3), *Allen v. Barnhart,* 357 F.3d 1140, 1145 (10th Cir. 2004).

<u>Consideration of Medical Source Information</u>

Plaintiff argues the decision should be reversed because the ALJ failed to consider and explain how he weighed the differing medical opinions.   Robin Endres, ARNP, completed a form noting 14 of 18 trigger points were positive for fibromyalgia. [R. 248]. The ALJ stated he gave no weight to Ms. Andrews.[3]   Plaintiff argues that Ms. Endres's

---

[3]    The ALJ refers to Ms. Andrews, but the record was signed by Ms. Endres.    The court refers herein to Ms. Endres.

opinion should be considered as an "other source" and evaluated pursuant to Social Security Ruling (*SSR*) 06-3p, 2006 WL 2329939.  The Commissioner states that the ALJ is under no requirement to explain the weight of other sources.  In reply, Plaintiff asserted that without discussion, one cannot believe the ALJ carefully considered the evidence.

The court finds no error in the ALJ's rejection of Ms. Endres's opinion.  The ALJ sufficiently discussed Ms. Endres's opinion:

> As for the opinion evidence, the record reveals that on February 15, 2010, Robin Andrews [sic] ARNP, from Lifespan completed a Fibromyalgia Syndrome Medical Assessment Form.  At that time, Ms. Andrews noted specific limitations, diagnoses, and alleged symptoms reported by the claimant, with all being significantly more limiting and restrictive than corroborated by the evidence of the record.  Specifically, she noted 14 out of 18 positive for fibromyalgia testing, however, as previously noted, Dr. Reddy found only 2 positive, out of 18, upon examination.  (Exhibit 18F).[4]

[R. 21-22].    This explanation is sufficient because the court can follow the ALJ's reasoning.  *See Lundgren v. Colvin,* 2013WL936358 at *3 (10th Circuit)(quoting *Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1164 (10th Cir. 2012).

Plaintiff further asserts that the ALJ erred by failing to weigh all reports as he did not mention the opinions  of  the  non-examining, non-treating reviewing experts of the State agency.  [Dkt. 18, p. 4]. Cynthia Kampschaefer, Psy.D., a non-examining psychiatrist, completed a Psychiatric Review Technique on December 9, 2008, and found that the Plaintiff suffered from "No Medically Determinable Impairment." [R. 216].  On December

---

[4]    The ALJ incorrectly noted Dr. Reddy's scoring of the fibromyalgia test on April 12, 2010, as 2 out of 18, when according to the record, Dr. Reddy's score was 8 out 18. [R. 300].   Plaintiff's score was 2 out of 18 on November 22, 2008, in the physical consultative examination conducted by Dr. Johnson Gourd, M.D. [R. 215].

16, 2008, Luther Woodcock, M.D., non-examining physician reviewed the Plaintiff's medical records and found that her medical condition was non-severe. [R. 231].  On March 24, 2009, Sally Varghese, M.D., reviewed all of the medical evidence in the file and affirmed the assessment of December 9, 2008 as written. [R. 242].  On March 24, 2009, Mary Lanette Rees, M.D., reviewed the Plaintiff's medical records and opined physical is non-severe. [R. 243].  As the record substantiates, these non-examining, non-treating reviewing experts do not support Plaintiff's claim for disability – on the contrary, they support the ALJ's findings of "not disabled."  The ALJ's failure to assign a specific weight to the non-examining, non-treating reviewing experts who were of the opinion that Plaintiff is not disabled is not a basis to reverse the ALJ's decision.

<u>Step Five Determination</u>

The Plaintiff asserts that the ALJ failed to perform a proper step five determination based upon the hypothetical questions posed to the vocational expert and the responses thereto which included both light and sedentary jobs.  Plaintiff contends that she is precluded from performing light exertional level work as well as sedentary jobs based upon the findings of the second physical consultative examination performed by Dr. Sri Reddy, M.D. [Dkt. #18, p. 5].  Plaintiff states "[O]ne must be able to stand and walk for up to six hours of eight to do light work." [Dkt. 18, p. 5].  Light work contains no such requirement.  Although light work <u>may</u> require a good deal of walking, a job may be in the light work category when it "involves sitting most of the time with some pushing or pulling of arm or leg controls."  20 C.F.R. § 404.1567(b), 416.967(b).

The record reflects that Dr. Reddy found that plaintiff could sit for 8 hours without interruption, as well as stand for 2 hours per day and walk for 2 hours per day.

8

Additionally, Dr. Reddy found Plaintiff could occasionally lift up to 20 pounds, could reach, reach overhead, push and pull occasionally and perform activities of handling, fingering and feeling frequently. Dr. Reddy also determined that plaintiff could occasionally balance, stoop, kneel, crouch and crawl. Dr. Reddy indicated that the plaintiff's physical impairments did not prevent her from activities such as shopping, traveling, walking one block, using public transportation, prepare simple meals, care for her personal hygiene, and sort, handle, and use paper/files. [R. 290-295].

The ALJ found that Plaintiff has the residual functional capacity to perform less than the full range of light exertional work as defined by 20 C.F.R. § 416.967(b) with limitations in her ability to climb, stoop, crouch, crawl, kneel, push and/or pull, reach overhead, twist her torso , and nod her head and is slightly limited in her ability to finger, feel and grip.  The ALJ also found that the Plaintiff should avoid cold and damp environments and dust, fumes, and gases and requires low light/low noise environments, is able to perform simple, repetitive and routine tasks and is slightly limited in reference to contact with the general public, co-workers and supervisors. [R. 16].   The ALJ's decisional RFC is generally consistent with the findings of Dr. Reddy and flows from the entirety of  medical evidence in the record as well as from an assessment of Plaintiff's impairments.  The ALJ discussed the Plaintiff's activities of daily living in which she testified that she is able to dust, make the bed, wash laundry, cook, watch television and read.  The court finds that ample evidence supports the ALJ's RFC assessment.

Plaintiff assets that the hypothetical is inaccurate because it does not contain all of the limitations found by the mental consultative examiner, Dr. Minor Gordon, Ph.D., which were outlined in his psychological evaluation dated April 22, 2010. [R. 315-318].  The RFC

included limitations to simple, repetitive, and routine tasks and a slight limitation in reference to contact with the general public, co-workers, and supervisors.  Dr. Gordon completed an "Assessment of Ability to Engage in Work Related Activities (Mental)," in which he found no restrictions to the Plaintiff's ability to understand and remember simple/complex instructions.  As to Plaintiff's ability to carry out simple instructions and to make judgments on simple work-related decisions, Dr. Gordon found only "mild" restrictions.  Dr. Gordon found Plaintiff's ability to interact with supervisors, co-workers, and the public a mild restriction with a moderate restriction pertaining to Plaintiff's ability to respond appropriately to usual work situations and to changes in routine work setting.  Dr. Gordon found no other capabilities were affected by the impairment. [R. 319-320].   The ALJ's RFC finding adhered to, not diverged from, the findings of Dr. Gordon.  The court finds no error in the ALJ's treatment of Dr. Gordon's findings.

Credibility Determination

Much of Plaintiff's argument concerning the ALJ's credibility determination addresses the ALJ's use of stock boilerplate language.  The Tenth Circuit has made it clear that in the absence of a more thorough analysis, the use of boilerplate language is insufficient to support an ALJ's credibility determination.  However, the Tenth Circuit has made it equally clear that when the ALJ provides specific reasons for his credibility determination and links the credibility determination to the evidence, the presence of boilerplate language will not require remand.  *Cf. Boehm v. Astrue,* 2013 WL 541067 at *2 (10th Cir. 2013(rejecting the same argument advanced in this case in another appeal argued by Plaintiff's counsel), *Polson v. Astrue,* 2013 WL 238849 at *2 (10th Cir. 2013 (same), *Strickland v. Astrue,* 2013 WL 3935755 at *7 (10th Cir. 2012)(same).

The ALJ found that the claimant exaggerates some of her symptoms including disabling pain, the severity of the claimant's symptoms is disproportionate in comparison to the usual expected severity of her condition., the alleged effect of the claimant's symptoms on activities of daily living and basic task performance is not consistent with the total medical and non-medical evidence in the file.  The ALJ noted that medications have been relatively effective when taken as prescribed and that her reported symptoms and limitations have been inconsistent throughout the record and her complaints are inconsistent with her activities and the treatment records. [R. 21].  The court finds that the ALJ supported his credibility findings and appropriately related them to the record.

### Conclusion

The Court finds that the ALJ evaluated the record in accordance with the legal standards established by the Commissioner and the courts.  The Court further finds there is substantial evidence in the record to support the ALJ's decision.  Accordingly, the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

SO ORDERED this 26th day of March, 2013.


*Frank H. McCarthy*

FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE

11